UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| GEMINI INSURANCE COMPANY, | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-01393-X |
| | § | |
| CHOICE EXPLORATION, INC., | § | |
| | § | |
| *Defendant*. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is plaintiff Gemini Insurance Company's (Gemini) *Motion for Summary Judgment* [Doc. No. 27]. Gemini and defendant Choice Exploration, Inc. (Choice) fully briefed the motion, and the Court held a hearing on January 30, 2020. Therefore, the motion is ripe for the Court's review. After careful consideration, the Count **DENIES** Gemini's motion for summary judgment and **DISMISSES WITHOUT PREJUDICE** the parties' claims as unripe.[1]

I. Legal Standard

The Court begins with the standard for summary judgment. Summary judgment is appropriate only if, while viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to

---

[1] Under section 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

1

any material fact and the movant is entitled to judgment as a matter of law."[2]  "A fact is material if it 'might affect the outcome of the suit'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3]

## II. Background

This case presents no genuine dispute of material facts.  Gemini issued Choice policy no. JCH2001259 (the policy), effective April 15, 2015–16 (the policy period), for the Kent Spradley #1 Well (the well).  During the policy period, Choice operated and owned an interest in the well.  The well suffered a control event from September 12–19, 2015 (the occurrence).

The core dispute in this case is not factual, but legal: what are the parties' obligations under the policy?[4]  The policy has two notable sections, only one of which is the subject of this legal dispute.  Under Section IA, the policy provides certain coverage on a reimbursement basis for costs to regain control of the well.  Due to the occurrence, Choice incurred costs to regain control of the well and submitted those payments to Gemini for reimbursement.  Gemini reimbursed Choice according to the terms of the policy.  The parties do not dispute coverage under Section IA.  The parties only dispute Section IB.  That section provides certain coverage on a reimbursement basis for restoration or redrill of the well.

---

[2] FED. R. CIV. P. 56(a).

[3] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[4] The Court judicially notices, and appreciates, that this dispute involving an oil well—while dramatic—is not as dramatic as it could be.  *See, e.g.,* There Will Be Blood, 2007.

2

The parties' conflict is about what Section IB means and requires. Choice has not redrilled or restored the well since the occurrence. In 2016 and 2017, Choice received several project estimates for repairing, redrilling, and permanently plugging the well. In 2017, Choice submitted a redrill estimate (which included some repairs) and a permanent plugging estimate to Gemini. As late as April 2018, the parties discussed potential next steps regarding the well. At that time, Gemini told Choice to expect a reservation of rights letter and further requests for documents as it determined next steps regarding work on the well.

On May 31, 2018, Gemini filed this action against Choice. Generally, Gemini wants the Court to interpret the policy and to tell the parties what their obligations are under it. Specifically, Gemini seeks a declaratory judgment that it "has no obligation under the Policy to reimburse Choice for any expenses incurred after Choice ceased to have an ownership interest in the Well in 2017."[5] Alternatively, Gemini seeks a declaration that under Section IB of the policy, Gemini is obligated only to reimburse costs for restoring the well through a workover (not a redrill), is not obligated to reimburse Choice for any damage to the well that was not caused by the crossflow, and is not obligated to reimburse for betterments to the well. Gemini also seeks attorney's fees.

Choice responded with two counterclaims. Choice first requests a declaratory judgment saying that it "is entitled to coverage under Section IB of the Policy" and that Gemini "is obligated to reimburse Choice" for "a redrill of the Well, using an

---

[5] Plaintiff's *Original Complaint* (Complaint) ¶ 18 [Doc. No. 1].

3

expandable liner," "repair of the Well's cement interior damaged during the Occurrence," and "permanent plugging of the lost or otherwise damaged Well."[6] Choice also brings a counterclaim for anticipatory breach of contract.[7] Choice also claims that Gemini "anticipatorily breached the insurance contract when it (1) denied coverage to Choice following Choice's submission of a proof of claim and requested documents and (2) filed this action seeking a declaratory judgment that coverage is foreclosed."[8] In addition to claiming damages for its anticipatory breach claim, Choice also requests attorney's fees, court costs, and pre- and post-judgment interest.

Nearly one year after the commencement of this litigation, Gemini filed its motion for summary judgment for the Court to grant its declaratory judgment claim and deny Choice's counterclaims. This motion is ripe for the Court's review.

III. Analysis

A. Summary Judgment

Although there is no genuine dispute of material facts, Gemini is not entitled to judgment as a matter of law.[9] And based on the Court's interpretation of the policy, the parties' claims are not ripe for the Court's review.

---

[6] Defendant's *Original Answer and Counterclaims* (Answer) ¶ 57 [Doc. No. 8].

[7] Choice's answer labels this counterclaim as a "Breach of Contract," but the allegations in the Answer, as well as the arguments in the summary-judgment briefing, reveal this is actually a claim for anticipatory breach of contract.

[8] Answer ¶ 64.

[9] The only real factual dispute is whether Choice transferred some or all of its interests in the well after the policy expired on its terms. Although there is a genuine dispute about some of these facts, the Court finds, as the reasoning below demonstrates, that these facts are immaterial to interpret the policy for purposes of deciding the motion for summary judgment and for dismissing the parties' claims as not ripe.

4

The Court begins with Gemini's motion for summary judgment on its declaratory judgment claim. Under the federal Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[10] Essentially, Gemini's declaratory judgment claim is a request for the Court to interpret the policy, stating what Gemini and Choice's obligations are under it.

"Contract interpretation is a purely legal issue[.]"[11] And as "this is a diversity case, we interpret the contract at issue under Texas law."[12] In Texas, insurance policies are "generally controlled by the rules of construction and interpretation applicable to contracts."[13] And under Texas law, "the interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'"[14] "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."[15] Practically speaking, the Texas Supreme Court finds few policies or statutes to be ambiguous after close examination.

To interpret the policy, the Court begins with the policy's terms. Based on those terms, the Court makes three findings regarding the policy's meaning and

---

[10] 28 U.S.C. § 2201.

[11] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).

[12] *Id.*

[13] *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 858 (5th Cir. 2006) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).

[14] *Gonzalez*, 394 F.3d at 392 (internal citation omitted). The goal of contract interpretation in Texas is to "ascertain the true intent of the parties as expressed in the instrument" and "give effect to all provisions such that none are rendered meaningless." *Id.* (internal citations omitted).

[15] *Id.* (quoting *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520).

5

application to this dispute that warrant the denial of Gemini's motion for summary judgment and the dismissal of the parties' claims as unripe.

First, the policy still governs the parties' relationship. The Court interprets the policy as an occurrence-based, not a claims-based, policy.[16] This means that the claim for an occurrence covered by the policy does not have to be made during the policy period as long as the occurrence giving rise to the claim did occur during the policy period. Gemini argues that Choice's coverage ended when Choice transferred its interest in the well in 2017. But the policy says that "coverage shall terminate" when Choice "ceases to have an interest in such Well insured *unless* coverage is terminated sooner by operation of any of Paragraphs 9b(2), (3), (4), or (5) below[.]"[17] And paragraph 9(b)(5) says that "coverage shall terminate at the expiry" of the policy.[18] The Court finds that based on the express terms of the policy, the time between Choice's insurable interest in the well during the policy period and Choice's interest in the well today is irrelevant. This is because nothing regarding Choice's interest in the well after the policy's expiration date affects or eliminates the policy's coverage of occurrences that happened during the policy period. Therefore, the Court finds that the occurrence-based policy still governs Gemini and Choice's relationship,

---

[16] *See Appendix to Motion for Summary Judgment* (Appendix), at 56 [Doc. No. 29] ("In the event of an Occurrence giving rise to a claim recoverable hereunder, the Company shall in no event be liable under Section IA, IB and IC and any endorsements thereto for a greater percentage interest in any such claim than the Assured's percentage interest in the Well Insured *at the time that such Occurrence took place*.") (emphasis added).

[17] *Id.* at 59 (emphasis added).

[18] *Id.* at 60.

including this dispute about whether Choice can be reimbursed for a claim now regarding the occurrence then.

Second, Section IB only obligates Gemini to provide coverage to Choice on a reimbursement basis. The policy states that Gemini agrees to "reimburse" for "actual costs and/or expenses reasonably incurred to restore or redrill a Well" or to "permanently plug and abandon the lost or otherwise damaged Well."[19] The policy does not define "reimburse," but its plain meaning is "to pay back to someone."[20] In their pleadings, the parties agreed that both Section IA and Section IB provide certain coverage on a reimbursement basis.[21] Furthermore, the parties have demonstrated what a reimbursement basis looks like in practice under the policy. Under Section IA, Choice incurred expenses to regain control of the Well, submitted those expenses to Gemini, and Gemini reimbursed Choice. Section IB describes the same reimbursement process. Therefore, Gemini is not obligated to reimburse Choice under Section IB unless and until Choice submits actual costs or reasonable expenses for reimbursement, which Choice has not yet done.

This begs a question, which is central to this dispute: if Choice were to finally incur actual costs and expenses for redrilling, restoring, or plugging and abandoning the well, could it now submit those receipts to Gemini for reimbursement under

---

[19] Appendix, at 65.

[20] Merriam-Webster Online Dictionary, "Reimburse", *available at* https://www.merriam-webster.com/dictionary/reimburse (last visited Mar. 4, 2020).

[21] *See* Complaint ¶¶ 12–13 (alleging that the Policy "provides certain coverage on a reimbursement basis for costs to regain control of the Well" under Section IA and "provides certain coverage on a reimbursement basis for restoration or redrill of the Well" under Section IB); Answer ¶¶ 12–13 (admitting to Gemini's allegations in paragraphs 12–13 of the Complaint).

7

Section IB? The policy anticipates this case's very facts and answers this very question. The controlling, albeit possibly unsatisfying, answer is one that the parties' attorneys are all too familiar with: it depends. Choice's ability to be reimbursed for costs and expenses for redrilling or restoring the well simply depends on what Gemini and Choice agree to do from this point forward.

This is because of the Court's third finding, which is that Section IB of the policy obligates Gemini to negotiate with Choice new terms for providing coverage for redrilling or restoring the well. At this point in Gemini and Choice's business relationship, Section IB(1)(f) of the policy controls. It says:

> The Assured agrees to advise the Company if restoration or redrill has not commenced within 540 days from the date of accident, cancellation or expiry of this Policy, whichever shall occur last and such restoration or redrill shall be held covered at terms, rates and conditions to be agreed by the Company.[22]

The policy expired on April 15, 2016—776 days before this lawsuit began. At that time, the parties were doing exactly what the policy required: negotiating new coverage terms for redrilling or restoring a well that suffered an occurrence during the policy period, but the work to restore or redrill had not commenced within 540 days of the policy's expiration.

In sum, both parties are right and wrong on the issues. Gemini is correct in arguing that at the time it sought declaratory relief, it did not owe Choice any payment yet because Choice had not submitted actual costs or expenses to Gemini for

---

[22] Appendix, at 65.

8

reimbursement. But Gemini is incorrect in arguing that the policy no longer controls—under Section IB(1)(f), Gemini owes Choice a duty to negotiate new reimbursement terms because Choice informed Gemini that the well's restoration or redrill had not commenced within 540 days of the policy's expiration. Likewise, Choice is correct in arguing that the policy still governs its relationship with Gemini—the policy clearly anticipated a situation like this in which Choice did not restore or redrill the well until long after the policy expired by its terms. But Choice is incorrect in arguing that it is necessarily entitled to reimbursement—under Section IB(1)(f), it is only entitled to new reimbursement terms to which Gemini has yet to agree.

This is what the policy means and how it applies to this case. Therefore, the Court finds that Gemini is not entitled to judgment as a matter of law on its declaratory judgment claim.

### B. Next Steps

So where does this interpretation of the policy leave the parties? If the policy—specifically Section IB(1)(f)—still controls, then none of the parties' claims are ripe for the Court's review. Gemini cannot yet seek a declaratory judgment saying the policy no longer controls when it has not fulfilled its obligations under the policy to negotiate new redrill or restoration terms with Choice. It also leaves Choice with two counterclaims—declaratory judgment and anticipatory breach of contract—that are both not ripe under the Court's interpretation of the policy. This is because Choice

9

never submitted costs or expenses for reimbursement, and because Gemini has not yet breached its contractual duty to negotiate new reimbursement terms.

According to the Court's interpretation of the policy's terms, the parties do not need to remain in Court. Contrary to its fears, Choice is not left in an impossible situation—it does not have to put millions of dollars up front restoring or redrilling the well without assurances for reimbursement. And neither is Gemini obligated to reimburse Choice for any and all work Choice unilaterally decides to do on the well. They do not have a contract for reimbursement now, but they still have a contract *to contract* new reimbursement terms. Under the policy, Choice was obligated to inform Gemini if it had not redrilled or restored over the well within 540 days after the policy's expiration, and Choice fulfilled its obligation. And now Gemini is obligated to negotiate, in good faith and with fair dealing, new terms, rates, and conditions for a restoration or redrill of the well. It may well be that Gemini breaches its contractual duty to negotiate new terms, but it has not yet done so yet.

Therefore, Gemini is not entitled to judgment on its declaratory judgment claim and the parties' claims and counterclaims are not ripe. The judicial tool for handling claims that have yet to materialize is to dismiss such claims without prejudice due to lack of ripeness.[23] If Choice believes at some future point that Gemini has breached by failing to negotiate in good faith the reimbursement terms

---

[23] *See, e.g., Texas v. United States*, 523 U.S. 296, 300 (1998) (dismissing a declaratory judgment claim without prejudice on the grounds that the claim was unripe, explaining that a "claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all'") (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–81 (1985)).

for a redrill or restoration, it may file an appropriate suit at that time. Or if Gemini believes at some future point that it has finally fulfilled all its outstanding obligations under the policy such that the policy no longer imposes any duties on its relationship with Choice, it may file an appropriate suit at that time.

IV. Conclusion

Gemini is not entitled to summary judgment on the claims regarding its obligations under the contract. This is because the governing provision requires the parties to negotiate in good faith new terms for a redrill or restoration that did not commence within 540 days of the occurrence. Accordingly, none of the claims in this suit are ripe, and the Court **DISMISSES WITHOUT PREJUDICE** the parties' claims.

**IT IS SO ORDERED** this 4th day of March 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE